**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BREAH BEDFORD and SIMONE JONES, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v.                                                           ) | No. 19 C 00001 |
| ) | |
| THE CITY OF CHICAGO, a Municipal ) | Hon. Virginia M. Kendall |
| Corporation; Chicago Police Officers BRANDON ) | |
| DEWITT, COLIN PATTERSON, and HECTOR ) | |
| GALVAN; Captain PAUL KANE; Commander ) | |
| ROBERT RUBIO; Sergeant JOHN CONNEELY; ) | |
| 1000 LIQUORS d/b/a BIG CITY TAP; and ) | |
| JOSEPH PLEWA, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT RUBIO'S MOTION TO RECONSIDER**

Defendant, Lieutenant Robert Rubio[1], by and through one of his attorneys, Jordan F. Yurchich, respectfully requests that this Court reconsider its order denying his motion for summary judgment on Breah Bedford's claim of supervisory liability (count X). In support of this motion, Lt. Rubio states as follows:

**INTRODUCTION**

On March 1, 2023, this Court denied Lt. Rubio's motion for summary judgment on Bedford's claim of supervisory liability. (Mem. Op. & Order, ECF No. 212.) Although this Court acknowledged that Officer Dewitt used force against Bedford *before* Lt. Rubio (or any of the other supervisors) arrived on scene, it nonetheless found that he could be held liable since he "reviewed

---

[1] Since this incident, Lt. Rubio has been promoted to the rank of Commander. For purposes of this motion, Defendant will refer to himself as "Lt. Rubio" because it was his rank at the time of the incident.

and approved Officer Dewitt's Tactical Response Report" (TRR) and concluded that Dewitt had complied with department policy and that no further action was needed. (Mem. Order & Op. at 34.) For the reasons set forth below, Lt. Rubio respectfully requests that this Court reconsider its order since his after-the-fact approval of a TRR does not constitute personal involvement for purposes of section 1983. To hold otherwise would allow Bedford to recover against Rubio under a theory of *respondeat superior*, which is not permitted.

## BACKGROUND

### A. Factual Background[2]

On June 24, 2018, Breah Bedford and Simone Jones gathered outside of Big City Tap with several friends. (Mem. Op. & Order at 3.) Around 9:20 p.m., the owner of the bar and two bouncers told them to move down the sidewalk, away from the bar's entrance. (*Id.*) Although the group complied, Plewa returned a minute later and asked them to keep moving. (*Id.*) The group did not move, and a physical altercation erupted. (*Id.* at 4.)

Officers Brandon Dewitt, Colin Patterson, and Hector Galvan were in the immediate area and responded to the fracas, with Officer Dewitt in the lead. (*Id.* at 5.) Upon arriving, Officer Dewitt observed Bedford hitting Plewa several times with a chain and her fist. (*Id.*) Officer Dewitt approached Bedford from behind, grabbed her by the left shoulder, and pulled her back, causing her to fall to the ground. (*Id.* at 5-6.) While on the ground, Bedford began shaking and appeared to have a seizure. (*Id.* at 6.)

Meanwhile, Lt. Rubio was on duty, standing near the red-line train station, which is less than a block from Big City Tap. (Ex. 1, Rubio Dep. 96:1-11.) He was not present when Officer Dewitt approached Bedford and did not personally witness the incident. (Ex. 1, Rubio Dep. 97:4-

---

[2] The following facts are taken from this Court's ruling on summary judgment (Mem. Op. & Order). The facts are also taken from Lt. Rubio's deposition and Officer Dewitt's TRR.

- 2 -

98:7.) Instead, someone directed his attention to Big City Tap. (Ex. 1, Rubio Dep. 95:2-14.) Lt. Rubio made his way through the crowd, arrived a short time later, and observed Bedford on the ground, shaking her arms and legs. (Ex. 1, Rubio Dep. 100:5-102:10.) Eventually, an ambulance arrived and transported Bedford to a nearby hospital. (Ex. 1, Rubio Dep. 107:2-19.) Lt. Rubio remained at the scene, spoke with Officer Dewitt, Plewa, and viewed video footage from Big City Tap, which captured the altercation.

The following day, Lt. Rubio reviewed the portion of the TRR completed by Officer Dewitt and the portion completed by the reviewing supervisor to make sure the form was filled out correctly. (Ex. 1, Rubio Dep. 194-234.) He also completed the "Lieutenant or Above/Incident Commander Review" section of the TRR and determined that Dewitt's use of force complied with department policy. (Ex. 2, Dewitt's TRR at 3.) Accordingly, Lt. Rubio did not recommend further action. (Ex. 2, Dewitt's TRR at 3.) It must also be noted, however, that the TRR included the fact that the Civilian Office of Police Accountability had already opened an investigation, and Lt. Rubio was aware of that fact when he approved the TRR. (Ex. 1, Rubio Dep. 231-232).

In plaintiffs' second amended complaint, Bedford brings a supervisory liability claim against Lt. Rubio for condoning Officer Dewitt's use of excessive force. (Pl.'s 2nd Am. Compl. ¶¶ 95-100, ECF No. 63.)

### B. *Defendants' Motion for Summary Judgment*

Lt. Rubio moved for summary judgment on Bedford's supervisory liability claim on grounds that the undisputed material facts establish he was not personally involved in the alleged constitutional violation. (Mem. in Supp. of Mot. for Summary Judgment, ECF No. 152.) That is, Lt. Rubio asserted he could not be held liable since he was not present when Officer Dewitt used

force against Bedford and, as a consequence, did not facilitate, approve, condone, or turn a blind eye to it, or even know it was happening. (*Id.* at 29-30.)

### C. *Bedford's Response*

In her response, Bedford argued that Lt. Rubio acted with "deliberate indifference" because he approved Officer Dewitt's TRR and determined that the use of force complied with the Department's policies and directives. (Pls.' Response Mem. at 25-27, ECF No. 167.) She then leaped to the conclusion that Lt. Rubio's approval actively facilitated, approved, and condoned Officer Dewitt's force. (*Id.*)

### D. *The Court's Ruling*

On March 17, 2023, this Court denied Lt. Rubio's motion for summary judgment on Bedford's claim of supervisory liability. (Mem. Op. & Order at 33-34). While the Court acknowledged that Officer Dewitt used force against Bedford before any of the supervisors arrived on the scene, it noted that Lt. Rubio reviewed and approved Officer Dewitt's TRR and determined that he complied with department policy. (*Id.* at 34.) The Court concluded, therefore, that Lt. Rubio "could be held liable for approving and condoning Officer Dewitt's misconduct." (*Id.*)

Lt. Rubio respectfully requests that this Court reverse that portion of its prior order and grant summary judgment in his favor on Bedford's supervisory liability claim. As discussed below, a supervisor cannot be held liable under section 1983 where, as here, he was not present when the underlying constitutional violation occurred. Nor can a supervisor be held liable merely because he or she ratified or approved impermissible conduct after the incident occurred. To hold otherwise would open the flood gates to litigation by allowing plaintiffs to enmesh ranking police personnel in litigation each time they perform the routine task of reviewing and approving a subordinate officer's report.

**LEGAL STANDARD**

Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); see also *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012) (holding that Rule 54(b) provides that non-final, interlocutory orders may be revised by the district court at any time); *Brownlee v. Catholic Charities of Archdiocese of Chicago*, 2022 WL 602535, *1 (N.D. Ill. Mar. 1, 2022); *Young v. Murphy*, 161 F.R.D. 61, 62 (N.D. Ill. April 7, 1995) ("Rule 54(b) is the proper vehicle for a motion to reconsider a denial of summary judgment, because this type of order is interlocutory in nature."). This Court therefore has discretion to reconsider its ruling on defendants' motion for summary judgment. *Brownlee*, 2022 WL 602535, at *1.

Motions to reconsider serve a narrow function: "to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). As such, motions for reconsideration serve a valuable function and are appropriate where the court "has patently misunderstood a party or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); *Mosley v. City of Chicago*, 252 F.R.D. 445, 446-47 (N.D. Ill. 2008) (motions for reconsideration serve a valuable function by ensuring judicial accuracy).

**ANALYSIS**

"For constitutional violations under section 1983, a government official is only liable for his or her own misconduct." *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021) (internal quotation marks and citations omitted). To maintain an action for supervisory liability, a plaintiff cannot rely

on a theory of *respondeat superior* but, instead, must present evidence that the defendant violated the Constitution through his or her own conduct. *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). Indeed, a supervisor cannot be liable for the misconduct of their subordinates simply because they are in charge. See *Taylor*, 999 F.3d at 493; *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997) ("Supervisors who are simply negligent in failing to detect and prevent subordinate misconduct are not personally involved."). Rather, a supervisor can be liable only if the plaintiff's injury occurred at the supervisor's "direction or with [his] knowledge and consent and that the defendants acted either knowingly or with deliberate, reckless indifference." *Stockton v. Milwaukee County*, 44 F.4th 605, 619 (7th Cir. 2022). Significantly, the Seventh Circuit Pattern (Civil) Jury Instruction No. 7.23 confirms that a supervisor must have *known* that the subordinate was "about to [use excessive force]" but nonetheless "approved, assisted, condoned, or purposely ignored" the subordinate's use of force.

     We pause here to note that a "supervisory liability" claim is different from a "*Monell*" municipal liability claim. Indeed, supervisory liability is a concept distinct from municipal liability and is imposed against a supervisory official in his *individual capacity* for his own culpable action or inaction in the control of his subordinates. An official-capacity (or *Monell*) claim, in contrast, requires a plaintiff to show an action by a final policy-maker that was the "moving force" behind the constitutional injury. *Dixon v. County of Cook*, 819 F.3d 343, 348 (7th Cir. 2016). In this case, there is no dispute that Lt. Rubio was not personally involved in the underlying use of excessive force. And, because Bedford did not sue Lt. Rubio in his official capacity or otherwise allege that he was a final policy maker, he cannot be held liable simply because he "condoned" or "turned a blind eye" by approving a subordinate's TRR. See, *e.g.*, *DiGennaro v. Town of Gates Police Dept.*, No. 07-cv-6426 CJS, 2013 WL 3097066, at *7 (W.D.N.Y. June 18, 2013) (noting that "the plaintiff

seems to conflate the issues of official capacity claims, supervisory liability claims and *Monell* liability claims" where the individual officers "were not personally involved in the alleged constitutional [deprivation]"). Nor would such allegations or evidence be sufficient to prove such a *Monell* claim, even if Bedford had attempted to allege that (which she did not). See *Connelly v. Cook County Assessor's Office*, 583 F. Supp. 3d 1142, 1147-49 (N.D. Ill. Feb. 1, 2022) (Coleman, J.) For such a claim, the alleged constitutional violation must be "*caused* by '[an act] by a person with final policymaking authority.' " *Id.* at 1148 (emphasis added) (*quoting Molloy v. Acero Charter Schools, Inc.*, No. 19 C 785, 2019 WL 5101503, at *5 (N.D. Ill. Oct. 10, 2019) (Feinerman, J.). This means that the act of the final policymaker would have to be the "moving force" behind the constitutional violation. *Id.* Here, after-the-fact approval of a TRR could not count as such.

Returning to the merits, Bedford failed to identify a genuine issue of material fact on her supervisory-liability claim against Lt. Rubio because (1) he did not directly participate in the constitutional deprivation; (2) his after-the-fact review and approval of a TRR (or any police report for that matter) does not rise to the level of personal involvement that is required under section 1983; and (3) Bedford's injury did not occur at Lt. Rubio's direction or with his knowledge and consent. Respectfully, this Court erred when it found otherwise.

      **A.**      **Lt. Rubio Did Not Participate in the Constitutional Violation**

To begin with, Lt. Rubio was not present when Officer Dewitt used force and, as a result, he cannot be held liable under section 1983.

The Seventh Circuit's decision in *Gossmeyer*, 128 F.3d at 490, is instructive and illustrates why judgement should be entered in Lt. Rubio's favor. In that case, the plaintiff alleged that her Fourth Amendment rights were violated when her workplace desk was unlawfully searched. Relevant here, she named as defendants the director of DCFS, the executive deputy director, an

inspector general and a chief inspector general, who were either not present for or did not participate in the search. *Id.* at 494. On appeal, the Seventh Circuit affirmed the dismissal of the supervisory liability claims. *Id.* at 497. In so holding, the court reasoned that none of the defendants were present during the search and, therefore, had no personal involvement in it. *Id.* at 495. The court further noted that, even if the underlying search was unlawful, none of the defendants were present to turn a blind eye. *Id.*

Similarly, here, it is undisputed that Lt. Rubio was not present when Officer Dewitt approached Bedford and did not witness him grab her or pull her back. Instead, Lt. Rubio was standing near the red line train station when someone alerted him to the disturbance at Big City Tap, a block away. By the time he arrived, Bedford was already on the ground, shaking her arms and legs. Given these undisputed facts, Lt. Rubio did not know Officer Dewitt was about to use force and was not in a position to "approve, condone, or turn a blind eye" to the force used against Bedford to the extent that is required for this claim. To hold Lt. Rubio liable on this record would amount to *respondeat superior* liability, which is not available for constitutional claims. See, *e.g.*, *Gossmeyer*, 128 F.3d at 495; *Kincaid v. Sangamon County*, No. 09-cv-3053, 2015 WL 4624631, at *4 (C.D. Ill. Aug. 3, 2015) (granting sheriff's motion for summary judgment where he was "not on-site" or personally involved in the denial of adequate medical care); *Lopez v. Vidljinovic*, No. 1:12-CV-5751, 2016 WL 4429639, at *3 (N.D. Ill. Aug. 22, 2016) (watch commander could not be held liable for subordinate's use of excessive force where he was not at the scene when the tasing occurred).

Lt. Rubio acknowledges that, in *Lopez*, the court discussed that in some instances section 1983 liability may apply to a supervisor if he was on notice of prior instances where the actor engaged in misconduct. *Id.* But that is not the case here. In this case, there is no evidence that Lt.

Rubio was on notice of misconduct on the part of Dewitt that raised to the level of approval or condoning such actions. Surely, if such evidence existed, Bedford would have raised that argument in their response. Bedford's response makes no such claim. Summary judgment is the put up or shut up moment where a party must show what evidence it has for a jury to find in their favor. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Bedford did not put up any evidence to support this argument.

Put simply, Lt. Rubio cannot be held liable simply because he served as a lieutenant, particularly given the absence of any competent evidence suggesting he was present when the force was used, "turned a blind eye" to any predicable violations, or had any reason to believe an unconstitutional deprivation would take place. To hold otherwise would eviscerate section 1983's personal-involvement requirement and would allow plaintiffs to enmesh government officials in litigation based on the routine and perfunctory task of reviewing and approving reports. To be sure, virtually every report authored by a police officer must be reviewed and approved by higher-ranking personnel.[3] This includes, for example, approving traffic stop reports (TSR), arrest reports, complaints for search warrants and arrest warrants, reports related to inventorying evidence, among others. Respectfully, the Court made an error of apprehension as to how the phrase "approve, condone, or turn a blind eye" has been applied in cases in this Circuit.

    B.    **No Liability for Approving a Tactical Response Report**

Next, Lt. Rubio respectfully submits that this Court made an error of apprehension when it found that Lt. Rubio could be held liable based upon his review of Officer Dewitt's TRR and determination that the force used complied with department policy.

---

[3] Some police reports—like the TRR in this case—require multiple supervisors to review and approve the report.

The Seventh Circuit explored this principle in *Kernats v. O'Sullivan*, 35 F.3d 1171, 1182-83 (7th Cir. 1994). In that case, both parties acknowledged that the supervisor was not present to approve or condone the alleged constitutional injury at the time it occurred. *Id.* The supervisor, however, met with the plaintiffs several days later and then wrote a letter in an attempt to "explain and justify" the subordinate officer's actions. *Id.* The Seventh Circuit declined to extend liability to the supervisor for simply attempting to "dissuade the [plaintiffs] from taking their case to the media (or the courts)." *Id.* The court's reasoning was animated in large part by the understanding that by the time the supervisor wrote to the plaintiffs, "any unconstitutional seizure that may have taken place had been accomplished and [the supervisor] could have done nothing to undo that fact. [The supervisor's] behavior [was] not the type of involvement in a constitutional violation that gives rise to § 1983 liability." *Id.*

Notably, the *Lopez* court—which, as discussed above specifically noted that there are situations in which report approval could result in supervisory liability—applied the Seventh Circuit's decision in *Kernats* and found that approving a TRR does not give rise to section 1983 liability. In that case, a Chicago police officer discharged his taser, which struck the plaintiff. *Lopez*, 2016 WL 4429639, at *1. Thereafter, the watch commander reviewed and approved the officer's TRR and concluded that his actions complied with the use of force policy. *Id.* at *2. The plaintiff sued the officer for excessive force and claimed the watch commander was also liable because he approved the TRR. *Id.* at *2. Following the close of discovery, the district court granted the watch commander's motion for summary judgment. *Id.* In so holding, the court noted that the watch commander was not present at the scene; any unconstitutional seizure that may have taken place had been accomplished; and the watch commander could have done nothing to undo that fact. *Id.* at *2-3. The court further reasoned that even if the plaintiff "ultimately proves that [the

officer's] tasing was unconstitutional at trial, [the watch commander's] review of the [TRR] commemorating the incident is 'not the type of involvement in a constitutional violation that gives rise to section 1983 liability.' " *Id.* at *3; see also *Brand v. Jeffreys*, 3:21-cv-01396-GCS, 2022 WL 3153994, at *2 (S.D. Ill. Aug. 8, 2022) (the mishandling of a grievance, which was reviewed by a supervisor "after the fact," did not satisfy section 1983's personal-involvement requirement); *Wilson v. DeTella*, No. 1:97-cv-07833, 1999 WL 1000502, at *1 (N.D. Ill. Nov. 1, 1999) ("DeTella's failure to investigate or to impose discipline on the wrongdoers after the fact did not amount to a constitutional violation").

Similarly, here, it is undisputed that Lt. Rubio was not present at the scene when take-down maneuver was performed, and he only learned of the incident after the force was used. There was nothing he could have done to undo that fact. Just like in *Lopez* and *Kernats*, even if Bedford ultimately proves that Officer Dewitt's use of force was unconstitutional at trial, Lt. Rubio's after-the-fact review and approval of the TRR is not the type of involvement that gives rise to section 1983 liability. Rather, to be held liable under section 1983, Rubio must have been present with Officer Dewitt and in a position to stop the force from occurring.

In sum, Bedford has not come forward with any evidence from which a reasonable factfinder could possibly infer that Lt. Rubio *knew* Officer Dewitt *was about to* use excessive force or that he approved, condoned, or facilitated it. The undisputed material facts establish that Rubio was not personally involved in the underlying constitutional deprivation, and he is entitled to summary judgment on Bedford's claim of supervisory liability. This Court made a manifest error of law when it held otherwise, and reconsideration and reversal is warranted.

### C. Lt. Rubio did not Cause Bedford's Injuries

Finally, Lt. Rubio's alleged failure to impose discipline on Officer Dewitt after the fact did not amount to a constitutional violation since it did not cause Bedford's injuries.

As noted above, section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused the plaintiff's injuries. *Pacelli v. DeVito*, 972 F.2d 871, 875 (7th Cir. 1992). In fact, the fourth element of Bedford's supervisory liability claim requires her to prove that "[a]s a result, Plaintiff was injured." 7th Cir. Pattern (Civil) Jury Instruction No. 7.17. In this case, Lt. Rubio's conduct after the fact did not amount to a constitutional violation since his review of the TRR and refusal to recommend discipline did not amount to a constitutional violation; it was not cause the cause of Bedford's injuries or damage; indeed it had no effect on her whatsoever. See *Wilson v. DeTella*, 97 CV 7833, 1999 WL 1000502, at *5 (N.D. Ill. Nov. 1, 1999) (conduct of "wrongdoers after the fact did not amount to a constitutional violation since the omission was not the cause of [the] plaintiff's injuries.").

Accordingly, Bedford cannot survive Lt. Rubio's motion for summary judgment since she cannot establish that she was injured as a result of his after-the-fact approval of a TRR.

### CONCLUSION

In conclusion, Lt. Rubio respectfully requests that this court reverse its prior order and grant summary judgment in his favor on Bedford's claim of supervisory liability since the undisputed facts establish that his position as a lieutenant and approval of a tactical response report do not give rise to liability under section 1983.

DATED: September 12, 2023            Respectfully submitted,

                                                   Chicago Police Lieutenant ROBERT RUBIO

                                                        BY:    */s/ Jordan F. Yurchich*
                                                                       JORDAN F. YURCHICH
                                                                       Assistant Corporation Counsel Supervisor
                                                                       Attorney No. 6307379

Jessica Griff, Chief Assistant Corporation Counsel
Jordan Yurchich, Assistant Corporation Counsel Supervisor
Eric Seeleman, Assistant Corporation Counsel
City of Chicago, Department of Law
2 North LaSalle Street, Suite 420
Chicago, Illinois 60602
312.745.1625 (Yurchich)
***Attorneys for Robert Rubio***

## CERTIFICATE OF SERVICE

I hereby certify that, on **September 12, 2023**, I submitted with the Clerk for the Northern District of Illinois using the Court's electronic filing system or CM/ECF **Rubio's Motion to Reconsider**, and thereby provided a copy of same by service to all attorneys of record at the electronic addresses they provided to the court.

*/s/ Jordan F. Yurchich*
JORDAN F. YURCHICH
Assistant Corporation Counsel Supervisor