THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BREAH BEDFORD and SIMONE JONES, | ) |
| *Plaintiffs*, | ) |
| v. | ) No. 19 C 00001 |
| | ) Hon. Virginia M. Kendall |
| BRANDON DEWITT et al., | ) |
| *Defendants.* | ) |

## MEMORANDUM OPINION AND ORDER

During the 2018 Chicago Pride Parade, a bar brawl broke out. Police responded to the incident, and Plaintiffs Breah Bedford and Simone Jones suffered injuries. They brought this action against the bar and its owner, the City of Chicago, and Chicago Police Department (CPD) officers—including Defendant Commander Robert Rubio—alleging constitutional violations pursuant to 42 U.S.C. § 1983 and various state-law tort claims. Defendants moved for summary judgment. Among other claims, Count X, Bedford's supervisory liability claim against Comm. Rubio, survived. Comm. Rubio moves for reconsideration of that summary-judgment denial. (Dkt. 231). For the following reasons, the motion is granted.

### BACKGROUND

The Court assumes familiarity with the facts from its prior Opinion ruling on Defendants' motion for summary judgment. (Dkt. 212); *Bedford v. DeWitt*, 2023 WL 2561757 (N.D. Ill. Mar. 17, 2023). At the 2018 Chicago Pride Parade, Plaintiffs Bedford and Jones were involved in an altercation outside of Big City Tap—a Lakeview bar and liquor store—that occurred between their group of friends and Big City Tap's owner and manager Defendant Joseph Plewa. (Dkt. 212 at 1).

1

Defendant Officers Brandon DeWitt, Hector Galvan, and Colin Patterson arrived first to the scene, with Officer DeWitt in the lead. (Dkt. 212 at 5). Upon arriving, Officer DeWitt observed Bedford hitting Plewa several times with a chain and her fist. (*Id.*) Officer DeWitt approached Bedford from behind, grabbed her by the left shoulder, and pulled her back, causing her to fall to the ground where she began shaking and appeared to have a seizure. (*Id.* at 5–6). An ambulance eventually arrived and took Bedford to Illinois Masonic hospital for evaluation and treatment. (*Id.* at 6). Comm. Rubio, along with another supervisor Cpt. Kane, arrived on the scene after Officer DeWitt's use of force. (Dkt. 166 at ¶ 36; Dkt 231-1 at 96:3–5, 98:5–7). Comm. Rubio spoke with Officer DeWitt at the scene. (Dkt. 195 ¶ 52; Dkt. 197 ¶ 62). The parties dispute whether Comm. Rubio and Cpt. Kane were considered preliminary investigators, who were tasked with conducting a thorough investigation, but Cpt. Kane testified that since he and Comm. Rubio were present, they were part of the investigation. (Dkt. 195 ¶ 54; Dkt. 197 ¶ 64).

Officer DeWitt subsequently completed a Tactical Response Report ("TRR") documenting the use of force, which Comm. Rubio then approved, finding that Officer DeWitt complied with CPD policies and directives. (Dkt. 212 at 6; Dkt. 195 ¶ 58). As with all TRRs, Comm. Rubio sent the TRR to the Civilian Office of Police Accountability ("COPA") for review.

In her suit, Plaintiff Bedford asserted a supervisory liability claim against Comm. Rubio for condoning Officer DeWitt's excessive use of force. (Dkt. 48 at 33). Defendants moved for summary judgment. (Dkt. 155). In Bedford's response, she argued that Comm. Rubio acted with deliberate indifference when he approved Officer DeWitt's TRR and failed to fully interview witnesses at the scene. (Dkt. 167 at 27). This Court denied Comm. Rubio summary judgment for supervisory liability related to Officer DeWitt's use of force against Bedford (Count X). (Dkt.

2

212). Comm. Rubio now asks the Court to reconsider its denial of summary judgment as to Count X pursuant to Federal Rule of Civil Procedure 54(b).

## DISCUSSION

A denial of summary judgment is an interlocutory order. Motions to reconsider are governed by Federal Rule of Civil Procedure 54(b). *See e.g.*, *Saccameno v. Ocwen Loan Servicing, LLC*, 2018 WL 1240347, at *2 (N.D. Ill. Mar. 9, 2018); Fed. R. Civ. P. 54(b). Nonetheless, motions to reconsider are governed by largely the same standards as motions under Rule 59(e) and should be granted only in rare circumstances, with the moving party bearing a heavy burden. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954–55 (7th Cir. 2013); *Harrington v. City of Chi.*, 433 F.3d 542, 546 (7th Cir. 2006); *Prayitno v. Nextep Funding LLC*, No. 17 C 4310, 2021 WL 10280226, at *1 (N.D. Ill. Jan. 13, 2021); *see also, e.g.*, *Wood v. Cap. Vision Servs., LLC*, No. 20-cv-4584, 2021 WL 1734363, at *1 (N.D. Ill. Mar. 16, 2021). To succeed, the movant must "clearly establish[]" that (1) the court committed a manifest error of law or fact, or (2) newly discovered evidence precluded entry of judgment. *Cincinnati Life Ins.*, 722 F.3d at 954.

In his Motion for Reconsideration, Comm. Rubio argues that Seventh Circuit case law precludes a finding of supervisory liability under Section 1983 for approving Officer DeWitt's TRR report after the alleged injury occurred. (Dkt. 231). In response, Bedford argues that (1) Comm. Rubio's involvement in her alleged injury went beyond solely reviewing and approving DeWitt's report; and (2) the Motion for Reconsideration is improperly raised. (Dkt. 239).

As a preliminary matter, the Court notes that this Motion for Reconsideration was filed *more than five months* after the Court ruled on the motions for summary judgment—and less than three weeks before trial. (Dkt. 212; Dkt. 231). However, when a motion to reconsider is filed more than 28 days after the order at issue, it is automatically considered a Rule 60(b) motion. *Hope v.*

3

*United States*, 43 F.3d 1140, 1143 (7th Cir. 1994); *O'Quinn v. Lashbrook*, No. 18-CV-2013-RJD, 2020 WL 3871199, at *1 (S.D. Ill. July 9, 2020). A court may grant a Rule 60(b) motion for "any other reason that justifies relief." Fed. R. Civ. Proc. 60(b)(6). Comm. Rubio's motion provides the Court with a thorough discussion of the case law that was not provided in the dispositive motion briefing. Though the Court disapproves of the timing, it is clear that reconsideration is proper in light of judicial economy and the weight of Seventh Circuit law.

Under Section 1983, "a government official is only liable for his or her own misconduct." *Taylor*, 999 F.3d 478, 493 (7th Cir. 2021) (quoting *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015)). A supervisor is liable for a subordinate's misconduct resulting in a constitutional violation only if the supervisor was personally involved. *Id.*; *see also Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). "Personal involvement in a subordinate's constitutional violation requires supervisors to know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Taylor*, 999 F.3d at 494. In other words, for a supervisor to be liable for the allegedly wrongful conduct of others, he must both (1) "know about the conduct" and (2) facilitate, approve, condone, or turn a blind eye toward it. *Kemp v. Fulton Cnty.*, 27 F.4th 491, 498 (7th Cir. 2022). Under the second prong, a supervisor is liable if he acted purposefully, knowingly, or recklessly, *but not negligently*. *Id.*; *Gonzalez v. McHenry Cnty., Ill.*, 40 F.4th 824, 828 (7th Cir. 2022) (emphasis added).

Thus, supervisory liability under Section 1983 cannot attach unless there is a showing that the supervisor violated the Constitution through their own conduct; namely, that Bedford's injury occurred at Lt. Rubio's direction or with his knowledge and consent. *See Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 619 (7th Cir. 2022). The Seventh Circuit has repeatedly clarified the high bar for personal involvement of a supervisor in Section 1983 claims. For example, in *Taylor*, the court

4

found that a supervisor officer "failing to conduct meaningful reviews" of the file, "fail[ing] to investigate independently the information provided by the subordinate officer, and "identify[ing] weaknesses in the investigation but declining to investigate them "may show ways" the supervisors "did not perform well," but did not amount to personal involvement in a constitutional violation. 999 F.3d at 495–96.

The Court held two pretrial conferences on this case on 9/26/23 and 9/27/23. During those conferences, the Court permitted both sides to elucidate their positions on the Motion for Reconsideration. Also, the Court provided an opportunity to both sides to brief the motion and both sides accepted that offer and provided the Court with briefs and caselaw. During the conferences, Plaintiffs argued their position by citing to the facts of the case that they believe provided for liability on behalf of Comm. Rubio. The facts were remarkably similar to the examples set forth in *Stockton*. *Id.*

Here, it is undisputed that Comm. Rubio was not present for and did not participate in Officer DeWitt's use of force against Bedford; he arrived at the scene shortly after the event occurred. Nor is there evidence that Comm. Rubio directed Officer DeWitt regarding his use of force or that Comm. Rubio knew and consented to it ahead of time. At this phase, the only facts connecting Comm. Rubio to Bedford's alleged violation is his after the fact approval of Officer DeWitt's TRR. As the Seventh Circuit has consistently affirmed, this after the fact approval does not rise to the level of personal involvement necessary to sustain a constitutional violation.

Further, Bedford argues that Comm. Rubio failed to properly investigate Officer DeWitt's use of force. However, while the record may show Comm. Rubio's approval of the TRR report may have been *negligent*, "supervisors who are merely negligent in failing to detect … subordinates' misconduct are not liable, because negligence is no longer culpable under section

5

1983." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). Similar to *Taylor*, Comm. Rubio's "failure to investigate independently the information provided by [DeWitt]" as a second level supervisor before forwarding the TRR to COPA for another level of review is insufficient to find Comm. Rubio liable as a supervisor under Section 1983. Thus, there is no way for a reasonable jury to find Comm. Rubio liable to Bedford under Count X.

## CONCLUSION

For these reasons, the Court grants Comm. Rubio's Motion for Reconsideration. [231]

_____
Virginia M. Kendall
United States District Judge

Date: September 28, 2023