IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BREAH BEDFORD and SIMONE JONES, | )<br>)<br>)<br>) |
| *Plaintiffs*, | ) No. 19 C 1 |
| v. | )<br>) Judge Virginia M. Kendall |
| BRANDON DEWITT et al., | )<br>) |
| *Defendants*. | ) |

**MEMORANDUM OPINION**

On October 11, 2023, a jury found for Plaintiff Simone Jones in her claims of negligence, battery, malicious prosecution, and intentional infliction of emotional distress against Defendant Joseph Plewa and his business 1000 Liquors, Inc. (d/b/a Big City Tap). (Dkt. 274). The jury awarded Jones $58,063 in compensatory damages and $65,000 in punitive damages. (*Id.*) Plewa now moves under Federal Rule of Civil Procedure 59 for a new trial on damages, or in the alternative remittitur. (Dkt. 280). He argues the $50,000 compensatory damages award for intentional infliction of emotional distress and the punitive damages award are excessive and against the weight of the evidence. (Dkt. 280). For the following reasons, Plewa's motion [280] is denied.

**BACKGROUND**

The Court assumes familiarity with the sprawling facts of this case from its prior rulings. *See, e.g.*, *Bedford v. Dewitt*, 662 F. Supp. 3d 856, 865 (N.D. Ill. 2023). At the 2018 Chicago Pride Parade, Plaintiffs Breah Bedford and Simone Jones became involved in an altercation outside Big City Tap—a Lakeview bar and liquor store—that occurred between their group of friends and Big City Tap's owner and manager Defendant Joseph Plewa. Following the parade festivities, Bedford

and Jones gathered outside Big City Tap with a group. Bedford and Jones were 18 and 19 years old at the time. Big City Tap's bouncers asked the group to move away from the bar's entrance and the group complied, moving down the sidewalk. But shortly thereafter, Plewa approached them to repeat the request. Bedford and Jones reported that Plewa used vulgarities and racial slurs toward them. Jones asked to speak to a manager, but the situation quickly unraveled and led to a physical altercation between Plewa, Jones, and Bedford before Chicago Police Department ("CPD") officers arrived on scene. In the melee, Plewa punched Jones twice, leaving her with a black eye. He pulled her onto the sidewalk, dragged her by her braids, then pinned her down for a matter of minutes until CPD officers arrived. Plewa also implicated Jones as the instigator of the altercation, leading to her arrest. In the following days, Plewa then signed and filed complaints against Bedford and Jones for battery in state court. After a bench trial in December 2018, the judge found both Bedford and Jones not guilty of the charges.

Bedford and Jones proceeded to bring a range of federal and state law claims against Plewa and 1000 Liquors Inc., CPD Officers, and the City of Chicago, including excessive force, negligence, battery, malicious prosecution, and intentional infliction of emotional distress ("IIED"). (*See* Dkt. 63). After an eight-day jury trial, the jury returned a verdict in favor of Jones in her negligence, battery, malicious prosecution, and IIED claims, but found for Defendants as to all of Bedford's claims. (Dkt. 274). The jury awarded Jones $58,063 in compensatory damages against Plewa, comprising of $3,062 (battery), $1.00 (negligence), $5,000 (malicious prosecution), and $50,000 (IIED). (*Id.*) The jury further awarded Jones $65,000 in punitive damages against Plewa. (*Id.*) Plewa now moves under Federal Rule of Civil Procedure 59 for a new trial, or in alternative a remittitur of the IIED compensatory damages and punitive damages. (Dkt. 280).

2

**LEGAL STANDARD**

A court may "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "A motion for a new trial under Rule 59 may be granted only when the district court—in its own assessment of the evidence presented—believes that the verdict went against [its] manifest weight." *Gevas v. Pork*, 2024 WL 730378, at *4 (N.D. Ill. Feb. 22, 2024) (cleaned up) (quoting *Abellan v. Lavelo Prop. Mgmt., LLC*, 948 F.3d 820, 831 (7th Cir. 2020)). "In passing on a motion for a new trial, the district court has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial." *Mejia v. Cook County*, 650 F.3d 631, 633 (7th Cir. 2011) (citing *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 540 (1958)). When a damages award is excessive, remittitur, not a new trial, is generally the appropriate remedy. *See Davis v. Consol. Rail Co.*, 788 F.2d 1260, 1263 (7th Cir. 1986); *Baier v. Rohr-Mont Motors, Inc.*, 175 F. Supp. 3d 1000, 1007 (N.D. Ill. 2016).

**DISCUSSION**

**I. Compensatory Damages Award for Intentional Infliction of Emotional Distress**

Plewa contends the IIED compensatory damages award is excessive and lacks reasonably certain proof. Intentional infliction of emotional distress is a state-law claim. "[W]hen a federal jury awards compensatory damages in a state-law claim, state law determines whether that award is excessive." *Rainey v. Taylor*, 941 F.3d 243, 253 (7th Cir. 2019); *see also Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 432 (1996) (holding state-law standards for evaluating a jury's compensatory damages award are substantive for *Erie* purposes). In Illinois, remittitur is appropriate "only when a jury's award falls outside the range of fair and reasonable compensation,

3

appears to be the result of passion or prejudice, or is so large that it shocks the judicial conscience." *Klingelhoets v. Charlton-Perrin*, 983 N.E.2d 1095, 1113–14 (Ill. App. 2013). It "should not be ordered if the award falls within the flexible range of conclusions which can reasonably be supported by the facts." *Id.* (citation omitted). The court "must also ensure that the award is supported by competent evidence." *Ramsey v. Am. Air. Filter Co.*, 772 F.2d 1303, 1313 (7th Cir. 1985) (citing *Carey v. Piphus*, 435 U.S. 247, 264 n.20 (1978)). When determining whether a compensatory damages award is excessive under Illinois law, "it is neither necessary nor appropriate to evaluate a jury's compensatory award against awards in similar cases." *Rainey*, 941 F.3d at 253.

Plewa first argues that Jones did not prove any "actual damages caused by the severe emotional distress" she suffered. (Dkt. 280 at 3–4). In part, Plewa notes that Jones only presented $3,062 in medical bills and that she did not submit any treatment bills or records regarding her emotional distress. From the jump, such evidence is not required to support the jury's finding of damages for IIED—Jones's testimony is sufficient. *See Ewing v. 1645 W. Farragut, LLC*, 2022 WL 1803542, at *2 (N.D. Ill. June 2, 2022), *aff'd*, 90 F.4th 876 (7th Cir. 2024) ("[D]amages for nonpecuniary losses can be supported solely by witness testimony." (citing *Vega v. Chi. Park Dist.*, 954 F.3d 996, 1008 (7th Cir. 2020))); *Rainey*, 941 F.3d at 253 (stating expert testimony is not required to establish emotional distress); *Thornton v. Garcini*, 928 N.E.2d 804, 809 (Ill. 2010) ("The absence of medical testimony does not preclude recovery for emotional distress."); *O'Sullivan v. City of Chicago*, 474 F. Supp. 2d 971, 988 (N.D. Ill. 2007) (noting "[i]t is not decisive that [plaintiff] did not present medical records or expert testimony in addition to the testimony that was presented about her emotional harm" since the jury could determine the credibility of testimony). Further, the fact that Jones did not see a psychiatrist, but rather a school counselor and

4

her pastor, is not fatal to the jury's award. Though Jones did seek help, seeking professional or psychiatric help is "not a necessary condition to a finding that a defendant actually suffered from severe emotional distress." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 606 (7th Cir. 2006) (citing *Bristow v. Drake Street, Inc.*, 41 F.3d 345, 350 (7th Cir. 1994)). Plewa's arguments go to the weight of the evidence, which the jury was in the best position to consider.

Here, the jury heard consistent testimony from multiple witnesses—including Simone Jones and her mother Karen Jones—outlining the emotional impact Plewa's actions had upon Jones. Jones testified to the extreme emotional distress that being physically attacked by Plewa, arrested, booked at a police station, and left in disarray had upon her on the night of the altercation. Then, the jury heard that for at least the first six months after the June 2018 events, Jones became reclusive, refusing to look at herself in the mirror, go outside, or socialize with her friends. Jones's personality was impacted as well, shifting from an outgoing young woman to one who was more closed-off, less trusting, less social, and unhappy. Jones was forced to see Plewa monthly through December 2018 for court hearings connected to her criminal battery prosecution, which brought her fear and anxiety. She further had difficulty sleeping due to the memories of events. Jones testified that she sought counseling at Governors State University and from the pastors at her church regarding the events. Though Jones sought a fresh start in Arizona and is by all accounts currently doing well, she stated that she has flashbacks to the traumatic events, even today.

The jury could properly weigh this testimony in determining their award. In fact, all facts indicate that the jury carefully considered the credibility of Plewa, Jones, and Bedford in reaching their verdict that found for Jones and against Bedford. It was proper for the jury to consider Jones's testimony "in the context of other evidence presented at trial," including observing Plewa's testimony and evaluating his "veracity and credibility" in contrast to Jones's. *Ewing*, 2022 WL

5

1803542, at *2. Their consideration is apparent in the result: the jury clearly found Jones's testimony persuasive in finding for her claims, yet perceived Bedford less credible in finding for Plewa. Illinois courts grant great deference to the jury, whose "function [is] to consider the credibility of witnesses and to determine an appropriate amount of damages." *Naeem*, 444 F.3d at 612 (quoting *Richardson v. Chapman*, 676 N.E.2d 621, 628 (Ill. 1997)); *see also O'Sullivan*, 474 F. Supp. 2d at 987–88 (noting the importance of a jury's opportunity to gauge the credibility and demeanor of a plaintiff testifying about mental suffering and collecting cases). Considering the evidence and these considerations, the Court cannot conclude that the $50,000 compensatory damages award for IIED "shocks the [] conscience" or is the result of passion or prejudice.

Further, citing to dicta from a nonbinding district court case, Plewa asserts that IIED awards at or more than $50,000 typical require "special circumstances" that are not present here. (Dkt. 280 at 4 (citing *Spina v. Forest Pres. Dist.*, 207 F. Supp. 2d 764, 772–773 (N.D. Ill. 2002)). First, this $50,000 cap from over twenty years ago does not adjust for inflation. *See Synnott v. Burgermeister*, 2024 WL 108784, at *2 (7th Cir. Jan. 10, 2024); *Gevas*, 2024 WL 730378, at *3 (noting older award sizes "ought to be adjusted for inflation"). Second, this dicta is unpersuasive and inapplicable. As Judge Cole explained, "Judge Keys used that phrase, not as an independent, self-defining test, but merely as a convenient shorthand for cases that involved more than the evanescent upset that accompanies the loss of a job in routine [Title VII] cases." *O'Sullivan*, 474 F. Supp. 2d at 984. Instead, the Court's only relevant inquiry is whether the jury's award falls outside the range of fair and reasonable compensation, appears to be the result of passion or prejudice, or is so large that it shocks the judicial conscience. *Rainey*, 941 F.3d at 253.

Finally, Plewa suggest the IIED compensatory damages award is a duplicative or deceitful guise for Jones's otherwise unavailable punitive damages award. But Plewa's contention that "the

6

only explanation" for the IIED compensatory damages was "an attempt to award additional punitive damages," (Dkt. 280 at 5), is belied by the jury's actual conduct and instruction. While punitive damages were not available for the IIED claim, they were available to Jones in her other claims. The jury was separately instructed that if they found for Jones, they may, but were not required to, assess punitive damages "to punish a Defendant for his conduct and to serve as an example or warning to the Defendant and others not to engage in similar conduct in the future." (Dkt. 273 at 38). Further, the jury was instructed this assessment could not be based on "bias, prejudice, or sympathy to either party." *Id.* Plewa has pointed to no evidence to call into question the jury's objectivity or that their calculated and distinct evaluation of damages contravened the explicit instructions. *See Young v. Mayer*, 2023 WL 8367923, at *29 (E.D. Wis. Nov. 27, 2023); *Fall v. Indiana Univ. Bd. of Trustees*, 33 F. Supp. 2d 729, 739 (N.D. Ind. 1998) (finding a challenge to compensatory damages insufficient where the defendant pointed to "nothing in the record, other than the size of the award, to impeach the objectivity of the jury or the fairness of the proceedings" (quoting *Dorin v. The Equitable Life Assurance Soc'y of the U.S.*, 382 F.2d 73, 78 (7th Cir. 1967))). For these reasons, the motion for a new trial on the IIED damages or reduction of the IIED award is denied.

## II. Punitive Damages Award

Next, Plewa challenges the punitive damages award as against the weight of the evidence and unconstitutionally excessive. A jury can award a plaintiff punitive damage "to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996). This award only violates the Due Process Clause "when [the] award can fairly be categorized as grossly excessive in relation to these interests [and thus] enter[s] the zone of arbitrariness" that violates the Fourteenth Amendment. *Id.* (cleaned up). *Gore*

7

set forth three guideposts for judicial review of a punitive damages award: (1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the award and the harm or potential harm suffered by the plaintiff; and (3) the difference between the award and civil penalties authorized in comparable cases. *Id.* at 575.

True, punitive damages are not available for IIED claims. *Johnson v. City of Chicago*, 2009 WL 3346602, at *1 (N.D. Ill. Oct. 15, 2009) (citing *Knierim v. Izzo*, 174 N.E.2d 157 (Ill. 1961)). Yet, punitive damages may be awarded for malicious prosecution and battery. *Id.*; *see also Swick v. Liautaud*, 662 N.E.2d 1238 (Ill. 1996); *Richardson v. County of Cook*, 621 N.E.2d 114, 120 (Ill. App. 1993). The Court will analyze each of the *Gore* guideposts in turn.

### a. Reprehensibility

The first guidepost examines the "flagrancy of the misconduct" and is the "primary consideration in determining the amount of punitive damages." *Cooper v. City of Chicago*, 2018 WL 3970141, at *7 (N.D. Ill. Aug. 20, 2018) (quoting *Gore*, 517 U.S. at 575 n.23). The court may consider in its analysis factors such as (1) physical harm; (2) reckless disregard of health or safety of others; (3) financial vulnerability of the victim; (4) repetition of the misconduct; and (5) malice. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 US. 408, 419 (2003). While there is no bright line rule, an absence of all five factors renders a punitive award suspect. *Synnott*, 2024 WL 108784, at *2.

Here, the Court can find four factors weighing in favor of the punitive damages award. No matter how Plewa may attempt to gloss over it in his motion, the jury saw concrete evidence that Plewa physically harmed Jones. The jury heard testimony from those present for the physical altercation, including Simone Jones, Breah Bedford, Kiera McElrath, and DaAngela Sheppard. The witnesses consistently stated that Jones did not spit, punch, throw, or initiate physical contact

8

with Plewa. Yet, Plewa punched Jones with a closed fist twice, dragged her by her braids down the sidewalk, and pinned her down for a matter of minutes. In addition to the testimony, the jury saw photographic and documentary evidence of Jones's injuries that day, including a black eye swollen shut, split lip, and bloody clothes. This evidence could also support an inference that Plewa had a reckless disregard for the health and safety of Jones. Though Plewa may have argued he was ensuring a safe sidewalk free from overcrowding, it was not unreasonable for the jury to find his means to an end were disproportionate and reckless. For example, the jury had a firsthand perspective on the physical discrepancy between the two: Plewa, a 280-pound grown adult, and Jones, a less than 100-pound teenager at the time of the events. The jury could be reasonably disgusted with Plewa's conduct toward Jones and determine a punitive damages award would punish and deter his conduct.

Further, though Plewa physically harmed Jones on the single occasion, his conduct could be considered repetitious in light of the six-month criminal legal battle and trial against Jones that Plewa pursued. After considering the oral and visual evidence of the altercation, the jury considered how Plewa initiated the criminal battery complaint against Jones. During this time, Jones had to see Plewa in court and faced the mental burden of both a fine and prison time.

Finally, the jury could reasonably conclude that Plewa's conduct constituted malice. Conduct that goes "above and beyond that required to establish the underlying tort[s]" of battery and malicious prosecution are sufficient to justify punitive damages. *Koehler v. Packer Grp., Inc.*, 53 N.E.3d 218, 249 (Ill. App. 2016). On top of the intentionality aspect of the battery claim, Jones, Bedford, McElrath, and Sheppard consistently testified that Plewa told the group to "go back to the south side," and other racial slurs and epithets, such as that they were "black bitches" and "hos." *See Edwards v. Haritos*, 2012 WL 774531, at *3 (N.D. Ill. Mar. 8, 2012) (finding evidence

9

that defendant "repeatedly used a racial epithet and profanity" sufficient to justify malice for punitive damages). Plewa's physical contact with Jones also rose above the intentionality necessary to sustain a battery conviction: in response to anger over a group of teenager's positioning on the sidewalk, he punched a 19-year-old girl two times. Based on the above facts, the Court concludes the punitive damages award was grounded in sufficient evidence. Accordingly, the jury could have found Plewa's conduct required further sanction.

### i. Disparity Between the Award and Harm

The second guidepost concerns the disparity between the harm or potential harm the plaintiff suffered and the punitive damages award. Though there is no formula to conclusively compare compensatory and punitive damages, the Supreme Court indicated that "few awards exceeding a single-digit ratio . . . will satisfy due process." *State Farm*, 538 US. at 425. Plewa attempts to slice up the compensatory damages award into its component parts, apparently to manipulate the ratio into appearing "massive." This tactic is unpersuasive. The facts remain that the jury awarded Jones $65,000 in punitive damages and $58,063 in compensatory damages, creating a ratio of 1.1 to 1. This almost one-to-one ratio does not even come close to exceeding a single-digit ratio.

In fact, the Court did not find a single case finding a one-to-one ratio excessive. *See Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071, 1090 (7th Cir. 2019) (finding a one-to-one ratio acceptable when the compensatory award includes emotional distress damages); *Worth v. Tyer*, 276 F.3d 249, 269 (7th Cir. 2001) ("The punitive awards barely exceed the amount of compensatory damages [and] [a]lthough not definitive, such a result is relevant."); *see also Rainey*, 941 F.3d at 255 (upholding 6 to 1 ratio and noting the Seventh Circuit has upheld ratios as high as 37 to 1); *Cooper*, 2018 WL 3970141, at *8 (finding 3.4 to 1 ratio satisfied due process); *Gracia v.*

*Sigmatron Int'l, Inc.*, 102 F. Supp. 3d 983, 993 (N.D. Ill. 2015) (finding a 5 to 1 ratio proportional and collecting cases). Even if Plewa's contrived ratio was accepted, an 8 to 1 ratio would still fit within these constitutionally permissible parameters. Moreover, the ratio is not mandatory where, as here, the compensatory damages are low. *See Synott*, 2024 WL 108784, at *2; *Saccameno*, 943 at 1088–89 ("[T]he ratio without regard to the amount tells us little value." (citation omitted)).

### ii. Comparable Awards

Finally, the third guidepost compares the punitive damages award with civil penalties authorized in comparable cases. This analysis is inherently difficult due to the "fact-specific nature of [civil] claims." *Cooper*, 2018 WL 3970141 at *9 (quoting *Hardy v. City of Milwaukee*, 88 F. Supp. 3d 852, 883 (E.D. Wis. 2015)). Further, "this guidepost generally deserves less weight than the other two." *Rainey*, 941 F.3d at 255.

Plewa offers the Court no comparable cases in his motion. The Court in its own review, properly searched within the Seventh Circuit and other federal courts around the nation. *Naeem*, 444 F.3d at 611; *O'Sullivan*, 474 F. Supp. 2d at 989 n.10. Considering inflation and the inherently fact-specific nature of the analysis, Jones's award of $65,000 in punitive damages appears reasonable and on the low-end. *See Hendrickson v. Cooper*, 589 F.3d 887, 894 (7th Cir. 2009) (upholding $125,000 in punitive damages where defendant "goaded" plaintiff into "creat[ing] a violent confrontation," and then "grabbed, shoved, floored, and kneed him" in the presence of others); *Worth*, 276 F.3d at 269 (punitive damages award of $50,000 for battery); *Stampf v. Long Island R. Co.*, 761 F.3d 192, 211 (2d Cir. 2014) (punitive damages award of $100,000 for malicious prosecution); *Stamathis v. Flying J, Inc.*, 389 F.3d 429, 433 (4th Cir. 2004) (punitive damages award of $450,000 for malicious prosecution); *Dean v. Olibas*, 129 F.3d 1001, 1007 (8th Cir. 1997) (punitive damages award of $70,000 for malicious prosecution). Ultimately, the jury's

11

award of $65,000 falls within the constitutionally permissible range and is supported by the evidence.

## **CONCLUSION**

For the foregoing reasons, Plewa's motion for a new trial and/or remittitur is denied. [280]

_____
Virginia M. Kendall
United States District Judge

Date: June 20, 2024